CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

JAN 2 9 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| **NATIONAL FAIR HOUSING ALLIANCE, INC., et al.,** | ) ) ) | **Case No.: 7:11-cv-00131-JCT** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **MEMORANDUM OPINION** |
| | ) ) | |
| **HHHUNT CORPORATION, et al.,** | ) ) | **By: James C. Turk** |
| **Defendants.** | ) ) ) | **Senior United States District Judge** |

This matter is before the Court on the Defendant J. Davis Architects, PLLC's ("J. Davis") Motion for Partial Summary Judgment. ECF No. 51. Plaintiffs filed a response, ECF No. 53, and Defendants filed a Reply, ECF No. 56. The Court heard argument on the motion on January 15, 2013, and the matter is now ripe for decision. The sole issue raised by the pending motion is whether the Plaintiffs' claims against J. Davis related to the apartment complex Abberly Green-Phase II are barred by the applicable statute of limitations in the Fair Housing Act, or instead should be deemed timely based on the "continuing violation" doctrine. For the reasons set forth below, the Court concludes that there are genuine disputes of material fact based on the current record as to whether or not the Abberly Green-Phase II claims are time-barred. Thus, Defendant's Motion for Partial Summary Judgment, ECF No. 51 is **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. Generally**

The motion currently before the Court involves a limited and discrete set of facts and legal issues. Prior to turning to those issues, however, the Court provides a general overview of the case. Plaintiffs, the National Fair Housing Alliance, Inc. and the Paralyzed Veterans of

America, Inc. are a nonprofit, public service organization and a nonprofit corporation, respectively. ECF No. 1, Compl. ¶¶ 10-11. Part of the mission of both organizations is to advocate for the rights of people with disabilities to accessible housing. Id. Plaintiffs filed their original Complaint on March 17, 2011, naming HHHunt Corporation and other entities that were either the developers or managers of various apartment complexes. Id. ¶¶ 12-22. In both their original Complaint and their Amended Complaint, Plaintiffs alleged that the complexes contained a number of design or construction features that constituted violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("FHA") and that those features rendered the complexes inaccessible to disabled persons. See generally ECF Nos. 1, 35.

On April 5, 2012, Plaintiffs filed an Amended Complaint adding J. Davis as a party. ECF No. 35, Am. Compl. ¶ 11. The Amended Complaint alleges that J. Davis was the design architect for only one of the subject properties, id. ¶ 20, but in later correspondence Plaintiffs made clear that they sought to pursue claims against J. Davis in connection with three properties named in the lawsuit: Abberly Place in Garner, North Carolina, Auston Chase–Phase I, in Ridgeland, South Carolina, and Abberly Green-Phase II, in Mooresville, North Carolina. ECF No. 52, at Ex. B.

The parties have since clarified, in their respective filings on the motion for partial summary judgment, that they are in agreement on two points. First, they agree that J. Davis was not involved in, and has no connection to, Abberly Place. See, e.g., ECF No. 52. Accordingly, Plaintiffs "concede they have no claims against Davis with respect to Abberly Place, and thereby abandon such claims." ECF No. 53 at 2 n.1. Second, they agree that, as to Auston Chase-Phase I ("Auston Chase"), the claims against J. Davis are timely and should be permitted to proceed at this stage. See ECF No. 52 at 4. The viability of the claims related to the third complex, Abberly

2

Green-Phase II ("AG-II") is thus the sole issue raised by the pending motion for partial summary judgment, and is discussed in further detail below.

The other noteworthy development in the case is that, subsequent to adding J. Davis as a party, Plaintiffs entered into a settlement and stipulated judgment with the remaining Defendants. ECF Nos. 44, 45. Accordingly, only the claims against J. Davis remain in the lawsuit.

### B. Facts Related to the Timeliness of the Abberly Green-Phase II Claims

The parties agree (although J. Davis does so "only for purposes of this motion," see ECF No. 52 at 7 n.3) that the statute of limitations began to run for the AG-II claims against J. Davis on December 18, 2007, when the last Certificate of Occupancy was issued for that property. But see Sentell v. RPM Mgmt. Co., Inc., 653 F. Supp. 2d 917, 922 (E.D. Ark. 2009) (suggesting that the limitations period against an architect could begin to run when he "completed his last act as the architect for the allegedly non-compliant building"). As discussed below, the applicable limitations period is two years. See infra at 4 (quoting 42 U.S.C. § 3613(a)(1)(A)). The Original Complaint here was filed on March 17, 2011, and the Amended Complaint, which named J. Davis for the first time, was filed on April 5, 2012. Thus, it is clear that in the absence of the application of the continuing violation theory, the claims related to AG-II are barred, since J. Davis was not sued within two years of December 18, 2007.

Plaintiffs contend that the continuing violation theory applies here, and saves the AG-II claims, because J. Davis was the architect responsible for designing both Auston Chase (as to which there are timely claims) and AG-II. According to Plaintiffs, J. Davis's design violations at both of these complexes are sufficiently related so as to constitute "flagrant, systematic and continuing violations of the FHA." ECF No. 35, First Am. Compl. ¶ 6; id. at ¶ 29 (referencing alleged FHA violations that represent evidence "of a continuing pattern and practice [consisting of] failures to design and construct covered units and the public and common use areas in accord

3

with" the FHA). They thus contend that the continuing violation doctrine renders their claims related to AG-II timely.

## II. ANALYSIS

### A. Standards Governing Summary Judgment Motions

The standards for evaluating a summary judgment motion are well established. "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)); Fed. R. Civ. P. 56(a). Put differently, summary judgment should be entered if the Court finds, after a review of the record as a whole, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

### B. The Fair Housing Act's Statute of Limitations

The FHA allows "[a]n aggrieved person [to] commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S.C. § 3613(a)(1)(A). In addressing a prior version of this limitations period,[1] the Supreme Court previously recognized that a continuing violation theory could apply to claims of FHA violations. Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982).

---

[1] The words "or the termination" were added by Congress in 1998, and several courts have noted that the amendment was intended to clarify Congress's intent to allow parties to recover for earlier acts under the FHA that constitute part of an ongoing pattern or practice. See, e.g., Wallace v. Chicago Housing Auth., 321 F. Supp. 2d 968, 972-73 (N.D. Ill. 2004) (citing H. R. Rep. No. 100-711, at 33, reprinted in 1988 U.S.C.A.A.N. 2173, 2194).

In <u>Havens</u>, which involved allegations of a continuing pattern, practice, and policy of unlawful racial steering,[2] the Supreme Court held that where a plaintiff alleges "an unlawful practice that continues into the limitations period," or a "continuing pattern, practice, and policy," as opposed to merely "isolated incidents," the continuing violation theory may apply.[3] See <u>id.</u> at 380-81; <u>see also</u> <u>Nat'l Adver. Co. v. City of Raleigh</u>, 947 F.2d 1158, 1167 (4th Cir. 1991) (the continuing violation is applicable where the "statutory violation does not occur at a single moment but in a series of separate acts" so that "if the same alleged violation was

---

[2] Racial steering, as defined by the Complaint in <u>Havens</u>, is a "practice by which real estate brokers and agents preserve and encourage patterns of racial segregation in available housing by steering members of racial and ethnic groups to buildings occupied primarily by members of such racial and ethnic groups and away from buildings and neighborhoods inhabited primarily by members of other races or groups." 455 U.S. at 366 n.1.

[3] Commentators and courts alike have identified two sub-types of "continuing violations." <u>See generally</u> Eve L. Hill & Peter Blanck, <u>Future of Disability Rights: Part Three, Statutes of Limitations in Americans with Disabilities Act "Design and Construction Cases"</u>, 60 Syracuse L. Rev. 125, 143-145 (2009); <u>Moseke v. Miller & Smith, Inc.</u>, 202 F. Supp. 2d 492, 506 (E.D. Va. 2002). The first type was described by the <u>Moseke</u> Court as a "continuing violation" theory, and the second as a "continuing effects" theory. The first type occurs where some housing units were constructed within the limitations period and others were constructed outside the period, but the continuing violation allows all of the acts to be remedied. Hill & Blanck, at 144-45. The second type "frequently involves an act that occurred long ago where the effects continue into the present," and thus "allows a plaintiff to recover for later injuries caused by an act that, by itself would be time-barred." <u>Id.</u> at 145. A number of courts, including the Ninth Circuit in <u>Garcia v. Brockway</u>, 526 F.3d 456 (9th Cir. 2008) (en banc), have rejected this second type in the FHA design and construction context, because it would allow recovery for the *effects* of discrimination and not actual discriminatory *acts* that occurred within the limitations period. <u>See</u> <u>Garcia</u>, 526 F.3d at 462 ("Plaintiffs . . . confuse a continuing violation with the continuing effects of a past violation. . . . '[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.'") (citations and footnote omitted). Put differently, the mere fact that a design defect continues to render a housing unit or complex inaccessible (at least until it is corrected) does not mean that a new occurrence occurs each day the defect is left unaddressed. As noted by the courts that have rejected the continuing effects theory, "[t]he statute of limitations provision would essentially be meaningless if the continuing violation doctrine were applied to claims asserted under that section, because a company designing or constructing a non-compliant building could be subject to liability indefinitely." <u>Kuchmas v. Towson Univ.</u>, 2007 WL 2694186, at *5 (D. Md. Sept. 10, 2007); <u>see also Moseke</u>, 202 F. Supp. 2d at 508 ("If the mere existence of a FHA non-compliant building is a continuing violation under the FHA then there is no limitations period on a disability discrimination claim involving design and construction.").

Plaintiffs here have made clear they are not advocating for the application of the "continuing effects" theory and thus this Court does not address its viability. <u>See</u> ECF No. 53 at 12-13 ("Plaintiffs' claims are not based upon the continuing effects of past violations but rather on the ongoing violations themselves."). Instead, only the viability of a pure continuing violation theory is at issue here.

committed at the time of each act, then the limitations period begins anew with each violation"); id. at 1166 (a plaintiff establishes a continuing violation by showing that the "illegal act was a fixed and continuing practice") (citation omitted). As the foregoing language from both Havens and Nat'l Adver. Co. makes clear, then, there must be some type of relationship or connection between the acts that occurred within the limitations period and those that occurred before that time. See id. Otherwise, the acts are, in the words of the Havens Court, merely "isolated incidents." See 455 U.S. at 381. The nature and closeness of the relationship is what is at issue here.

## C.  Viability of the Continuing Violation Theory As to Plaintiffs' AG-II Claims

J. Davis makes several arguments in support of its claim that the continuing violation doctrine cannot save Plaintiffs' AG-II claims. These include an argument that the Court should find the continuing violation theory inapplicable altogether in the context of FHA design and construction claims (relying in part on Garcia), and that the Court should refuse to apply the continuing violation theory to allow otherwise time-barred claims against *an architect*, as opposed to an owner or manager of a housing complex.

Plaintiffs counter that Garcia is inapplicable on several grounds. First, as noted supra at note 3, Plaintiffs are not asserting a claim based on the continuing effects of past acts of discrimination as the Plaintiffs in Garcia were. Additionally, Plaintiffs assert that Garcia does not govern the result here because it involved a single property and did not involve claims asserted in the multi-property context. Finally, Plaintiffs further posit that the continuing violation is properly applied against architects and that, although several of the cases cited by J. Davis that involved architects refused to apply the continuing violation theory, it was not primarily because the defendants there were architects or designers, but because there were no discriminatory acts within the limitations period.

6

As to the applicability of the continuing violation doctrine in general, the Court agrees with Plaintiffs that Garcia, even if it were binding authority, would not control the outcome here. This conclusion is buttressed by most post-Garcia cases, which have interpreted Garcia narrowly. Specifically, they have read Garcia as rejecting only the "modified continuing violation," see supra n. 3, i.e., as rejecting only the type of continuing violation theory where the plaintiff seeks to use it to impose liability for *effects* of allegedly discriminatory design and construction defects. See Garcia, 526 F.3d at 462 (discriminatory "acts" in the design-and-construction phase do not continue until an alleged defect is cured); Moseke, 202 F. Supp. 2d at 507. Here, however, Plaintiffs' theory is not based on the effects of past discrimination. Instead, it is based on Plaintiffs' allegation that J. Davis engaged in a pattern and practice of discrimination that included acts of design both outside the two-year limitations period (as to AG-II) and within the two-year limitations period (as to Auston Chase), and that the entire course of conduct should be deemed timely because it was part of a continuing pattern and practice. See, e.g., ECF No. 53 at 12-13.

The vast majority of cases to address the issue have recognized the applicability of the continuing violation theory where there were allegations, in multi-property cases, that a developer, manager, or owner of more than one property had a pattern or practice of violating the FHA as a result of design or construction defects. See, e.g., The Equal Rights Ctr. v. Avalonbay Cmtys., Inc., 2009 WL 1153397, at *8-9 (D. Md. Mar. 23, 2009) ("Avalonbay") (where plaintiff alleged that Defendants constructed at least 100 buildings in violation of the FHA, the continuing violation theory applied to save claims related to 77 properties that were completed more than two years before suit was filed); The Equal Rights Ctr. v. Lions Gables Residential Trust, No. 07-cv-2358, at 12-13 (D. Md. Aug. 13, 2008), attached as ECF No. 53-3, Ex. 1 ("Lions Gables") (denying defendants' motion to dismiss claims related to properties completed more than two

7

years prior because the continuing violation theory was applicable based on plaintiff's allegations of a pattern and practice of discrimination); Memphis Ctr. for Indep. Living v. Makowsky Constr. Co., No. 01-2069, at 4-6 (W.D. Tenn. July 25, 2003), attached as ECF No. 53-3, Ex. 2; ("Memphis Center") (denying motion for partial summary judgment and holding that pattern and practice allegations of FHA violations rendered timely plaintiffs' claims related to two apartment complexes completed more than two years before suit was filed, where a third complex was completed within the limitations period); Equal Rights Ctr. v. Camden Prop. Trust, No. 07-2357, 2008 WL 8922896, at *8-*10 (D. Md. Sept. 22, 2008) ("Camden Property") (upholding the application of the continuing violation theory to design and construction claims under the FHA in multi-property context); Silver State Fair Hous. Council, Inc. v. Ergs, Inc., 362 F. Supp. 2d 1218, 1222 (D. Nev. 2005) ("Silver State") (denying summary judgment on limitations issue because there was a dispute of fact as to whether the same alleged FHA violations at two apartment complexes constituted a pattern or practice of FHA violations that continued into the limitations period); see also Nat'l Fair Hous. Alliance v. A.G. Spanos Constr., Inc., 542 F. Supp. 2d 1054, 1061-62 (N.D. Cal. 2008) ("A.G. Spanos") (holding that the reasoning of Havens was applicable to an alleged pattern or practice of construction-based violations of the FHA, in a multi-property case). The Court finds the reasoning of these cases persuasive and therefore concludes that the continuing violation doctrine can be applied in design and construction cases under the FHA where there are multiple properties.[4]

---

[4] The Court also is unpersuaded by any argument that the doctrine should not apply to J. Davis because it is simply an architect, as opposed to a developer or builder. First, as Plaintiffs rightly point out, the cases that involved architects in which courts determined that the continuing violation doctrine was inapplicable, those courts did not base their decisions primarily on the fact that the defendant was an architect instead of a developer or owner. Instead, their decisions were based on the respective courts' findings that no discriminatory act occurred within the two-year limitations period as to any complex. See, e.g., Kuchmas, 2007 WL 2694186, at *4-*5; Moseke, 202 F. Supp. 2d at 508. Second, the text of the limitations period does not provide any principled reason for distinguishing between claims against architects or designers, on the one hand, and owners and managers, on the other. Indeed, the fact that the

The question then becomes whether the continuing violation theory is applicable based on the record before the Court, i.e., whether there is sufficient evidence here from which a jury could conclude that the alleged acts or violations at AG-II and Auston Chase are sufficiently related so as to constitute a pattern or practice, rather than merely "isolated incidents." On this point, there is conflicting evidence before the Court creating a genuine dispute of material fact and rendering summary judgment inappropriate.

J. Davis argues that in each of the cases Plaintiffs points to where the continuing violation theory was applied, the case involved allegations (if at the motion to dismiss stage) or evidence (if at the summary judgment stage) that the different properties at issue shared a number of similarities or that the violations were sufficiently identical so as to constitute a continuing practice or pattern, thereby supporting the connection between the timely claims and otherwise-barred claims. See, e.g., A.G. Spanos, 542 F. Supp. 2d at 1062 (denying motion to dismiss on limitations grounds where complaint alleged that the properties—82 apartment complexes located in 10 states, and allegedly designed and constructed by the defendants between 1991 and 2007—"share[d] relevant common elements of design," had "common bathroom and kitchen designs," had "identical floor plans in a number of complexes," and that the defendants "utilized the same or similar floor plans in the design and construction of thousands of covered units" at the properties, and distinguishing the case before it); ECF No. 55, Ex. A at ¶¶ 48, 50 (copy of

---

type of continuing violation theory the Court is considering still requires acts within the limitations period that are sufficiently related to acts that occurred before the limitations period establishes a safeguard against unlimited liability.

Moreover, as pointed out by Plaintiffs here, J. Davis's involvement in the two complexes here did not include merely drawing up plans and walking away. Instead, J. Davis was contractually obligated to be a representative of the owner of the two complexes, visit the construction sites and become familiar with the work performed, and to review and certify the amounts due to the contractors. Additionally, Davis's certification for a progress payment was "a representation to the Owner" that, "to the best of the architect's knowledge, information and belief, the quality of the work is in accordance with the Contract Documents." ECF No. 52, Ex. A, McCamy Aff. at Ex. 1 (AG-II contract). For all of these reasons, the Court concludes that the mere fact that J. Davis is an architectural firm does not preclude application of the continuing violation theory to it.

Complaint in <u>A.G. Spanos</u>); <u>Lions Gables</u>, No. 07-cv-2358, at 12-13 (denying motion to dismiss where the complaint alleged the properties at issue "were designed and constructed either simultaneously or seriatim," shared "relevant common elements of design," and had "virtually identical floor plans" in many of the complexes; ECF No. 55, Ex. B ¶¶ 35-38 (copy of Complaint in <u>Lions Gables</u>); <u>Camden Property</u>, 2008 WL 8922896, (allowing claims to go forward with regard to 106 subject properties, despite them being completed more than two years before suit was filed, where complaint alleged simultaneous or seriatim construction and "virtually identical floor plans" in many of the complexes); ECF No. 55, Ex. C ¶¶ 36-41 (copy of Complaint in <u>Camden Property</u>; <u>see also</u> ECF No. 55 at 4-5 (discussing alleged similarities between complexes in other cases, including <u>Avalonbay</u>, <u>Silver State</u>, and <u>Makowsky Constr.</u>, <u>supra</u>.) By contrast, J. Davis argues that the similarities here are much more limited, if not non-existent, and thus that the two complexes should not be considered related for purposes of applying the continuing violation doctrine.

In reviewing the similarities here, the Court concludes that, while it is a close call, there is at least a dispute of fact as to whether the two complexes were related so that the alleged violations constitute a continuing pattern or practice. On the one hand, it is true that there is no evidence that the architectural designs of the two properties were identical. Instead, in support of its motion, J. Davis has submitted the affidavit of N. Bond McCamy, who is a principal at J. Davis. Mr. McCamy has filed an affidavit in which he discusses J. Davis's involvement in the both Auston Chase Phase I and AG-II. He avers:

> The apartment complexes at Abberly Green Phase II and Auston Chase Phase I are very different from each other and are not related. They were designed and constructed in different cities and at different times. Auston Chase Phase I is located in a different state from Abberly Green Phase II. Each project is unique from the other. The layout of the complexes is different both externally and internally. Different designs and drawings were made for each

complex. The apartment complexes were not designed or constructed on a continuous basis.

ECF No. 52, Ex. A ¶ 12.

On the other hand, both the allegations in the Complaint and evidence submitted by the Plaintiffs indicate that the same or very similar FHA violations occurred at both properties. Specifically, Plaintiffs have submitted a declaration from William Hecker, an architect who avers he visited all the properties that are the subject of this lawsuit. ECF No. 53, Ex. A, Hecker Decl. at ¶¶ 5, 12-13. His declaration also includes a report that lists the design features and alleged violations he found at the complexes. See Hecker Decl., Exs. 3 & 4.

Admittedly, Mr. Hecker's Declaration itself offers little in the way of similarities between the two complexes. Indeed, as pointed out by J. Davis, Mr. Hecker's Declaration largely fails to distinguish between AG-II, which was designed by J. Davis, and Abberly Green-*Phase I*, which was not. See, e.g., ECF No. 53, Ex. A, Hecker Decl. at ¶¶ 12-15 (repeatedly referring to "Abberly Green" as a single unit); id. at ¶¶ 16-17 (referring to "Abberly Green, Phase I"). Even where Mr. Hecker compares the number of allegedly inaccessible design features, Mr. Hecker does so between Abberly Green-Phase I and Auston Chase, and it is the architectural plans of those two complexes that he has reviewed. Abberly Green-Phase I was not designed by J. Davis, however, and so that information is irrelevant.

But even if Mr. Hecker's statements in his affidavit are not considered (because of his failure to refer to AG-II specifically), there is nonetheless record evidence that allows a comparison of the two complexes. Specifically, in a separate part of Mr. Hecker's report, he lists the alleged violations he found at AG-II and, in a later portion, at Auston Chase. See ECF No. 53-1 at 65-78 (detailing violations at AG-II); id. at 80-95 (detailing violations at Auston Chase). On these pages, it becomes clear that there are substantially similar FHA violations at both

11

properties. According to this report, both properties have the following violations:

- accessible routes from site arrival points to the ground floor unit entrances have abrupt level changes greater than 1/4" in several locations;

- accessible routes from site arrival points to the building entrances had running slopes exceeding 5.0% without the required ramp features;

- routes from site arrival points to building entrances have steep, inaccessible cross slopes in various locations;

- routes from site arrival points to building entrances have curb ramps with steep inaccessible running slopes in various locations;

- at least one designated accessible garage at each property had exterior maneuvering space that was not accessible because it was steeper than the 2% maximum allowed;

- routes to certain common areas (the dog park, playground equipment, or picnic areas) were not validly accessible;

- walk-in closet doors or foyer coat closets in ground floor dwelling units did not offer the minimum specified 32" clear passage;

- abrupt level changes were present on the exterior side of the threshold of the primary entrance door to ground floor units, higher than 1/4" and not beveled with a maximum of 1:2 ratio slope;

- abrupt level changes at the carpet to hard floor transition of first floor units that were not properly beveled;

- in some ground floor dwelling units, kitchens did not have the specified 30" x 48" clear floor space because the sinks were mounted too near to the inside corner of the adjacent angled counter return; and

- in some ground floor dwelling units, master bathrooms did not have the specified 30"x 48" wheelchair maneuvering space outside the in-swinging bath door.

See generally ECF No. 53-1 at 69-78 (detailing violations at AG-II); id. at 84-95 (detailing violations at Auston Chase). While it is true that Mr. Hecker's report describes more—and likely more severe—violations at Auston Chase than at AG-II, see id.; ECF No. 53-1, Hecker Decl. ¶ 14-15 (describing that he found "similar" instances of inaccessible features at Auston Chase and "Abberly Green," but describing those at Auston Chase as being "more serious and more pervasive as compared to Abberly Green."), there are nonetheless sufficient similar violations that a jury could conclude the two complexes constitute a pattern of violations continuing into

12

the limitations period.

Additionally, this is not a case where there was a significant gap in time between the designing and construction of the two complexes. Instead, there was a minimal gap, if any, between J. Davis's involvement in the two complexes. As noted supra at note 4, J. Davis was contractually obligated to be involved in the construction of both complexes, and the last certificate of occupancy was granted at AG-II in December 2007. Three months later, on or about March 19, 2008, J. Davis's submitted the Auston Chase architectural plans to HUD. ECF No. 53-2, Ex. B, Decl. of James Nicholson at ¶¶ 10-11. Presumably, J. Davis worked on the plans for some time prior to their submission, and thus J. Davis may even had had overlapping involvement at the two complexes.

In short, while the evidence tying the two complexes together to establish a pattern or practice certainly could be stronger, the types of alleged violations at the two complexes, and the timing of their design and construction, are sufficient to allow a jury to conclude that the FHA violations at the two complexes was a pattern or practice of violations by J. Davis, and thus that the continuing violation doctrine properly could be applied to allow the AG-II Claims. Accordingly, the motion for partial summary judgment is **DENIED** at this time. If, after additional discovery by the parties, J. Davis adduces additional evidence that undercuts any relationship between the alleged violations at the two complexes, it may file a renewed motion for summary judgment on this issue. For now, however, Plaintiffs have presented sufficient evidence to create a dispute of material fact on the issue.[5]

---

[5] In light of the Court's ruling denying the motion for partial summary judgment, the Court need not address Plaintiffs' argument that the motion here is more properly addressed as a motion to dismiss and that Plaintiffs have had an inadequate opportunity to conduct discovery.

## III.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion for Partial Summary Judgment. ECF No. 51.

**ENTER**: This 29th day of January, 2013.

Honorable James C. Turk
Senior United States District Judge